# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

WILDY LAUREN,

    Plaintiff,

v.

WILLIAM NELLIS, *et al.*,

    Defendants.

Case No. 2:10-CV-01544-KJD-PAL

**ORDER**

Presently before the Court is Defendants' Motion for Summary Judgment (#42). Plaintiff filed a response in opposition (#48) to which Defendants replied (#51). Plaintiff also filed a Sur-reply (#56). Defendants then filed a Motion to Strike the Sur-reply (#59) to which Plaintiff filed a response in opposition (#60).

**I.  Facts**

On August 4, 2009, Las Vegas Metropolitan Police Department ("Metro") Dispatch received a 911 call from a Stephanie Bach who resided at 3053 Misty Harbour Drive. Bach asserted that earlier in the day a neighbor, Plaintiff Wildy Lauren ("Lauren"), deliberately tried to strike Bach with her vehicle as Lauren backed out of her driveway. The call was received by Metro at 4:40 p.m. Defendants, Officers William Nellis and Christopher Colacurci, were dispatched to investigate the complaint.

1   Initially, Nellis and Colacurci contacted Bach. Colacurci described Bach as being "upset" when she was interviewed. Bach referred the officers to an adjacent home, 3061 Misty Harbour, as the residence of the person that attempted to hit her. Bach identified Wildy Lauren by name and described her as blonde and wearing sunglasses. Nellis and Colacurci then proceeded to the home indicated by Bach. The door was answered by Plaintiff's roommate, Jeffrey Lin, who told the officers that Plaintiff was not at home. Linn told the officers that he had previous problems with Bach and gave them a document to read.[1]

According to Plaintiff's deposition testimony, she then arrived home in her gold Lexus SUV and parked in the driveway. Construing the evidence most favorably for Plaintiff, non-movant, the officers could not see the driveway from Plaintiff's doorstep where they stood talking to Lin. Plaintiff came up the sidewalk, behind the officers, and asked "What's going on?" walking past them and into the house. Officer Nellis replied, "We're investigating." At this point, Plaintiff was in the house, removing her shoes. Nellis then said to Plaintiff "I would like to see some ID." Instead of providing identification, Plaintiff asks "Well, what is it about?" When Nellis did not immediately reply, Plaintiff stated "If it's about the crazy neighbor next door, I don't want to be involved."

According to Plaintiff's allegations, Officer Nellis, followed quickly by Colarurci, restrained Plaintiff by grabbing her arms and throwing her to the floor. The officers then applied pressure to her shoulder blades while she lay face down on the carpet in order to force her arms together and cuff her. After Plaintiff was handcuffed behind her back, she was lifted to her feet. Plaintiff admits that all parties were yelling, but could not remember what was being said. Plaintiff also admits struggling against being restrained and handcuffed, because she was in pain. Plaintiff also testified that she was never struck by any instrument, hit, or punched by the officers. Plaintiff essentially describes being taken to the floor and handcuffed by the officers.

---

[1] Neither Defendants' nor Plaintiff's pleadings make clear what document was handed to the officers.

2

Officer Nellis then searched Plaintiff's bag, removed her wallet and found identification. Plaintiff was later moved to the backseat of a patrol car. Plaintiff was cited for obstructing a police officer. The officers also determined that there was not a sufficient evidentiary basis to either arrest Plaintiff for Bach's allegation or charge Bach with knowingly making a false allegation. Plaintiff is still being prosecuted by the City of Las Vegas on the obstruction charge.

Plaintiff filed the present action on August 3, 2010 in Nevada state court. It was subsequently removed to federal court and Plaintiff filed her amended complaint on December 20, 2010. The amended complaint asserts claims for violations of Plaintiff's Fourth and Fifth Amendment rights, a state law claim for intentional infliction of emotional distress, and a Monell claim against the Las Vegas Metropolitan Police Department.

**II. Standard for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497

U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

**III.  Analysis**

Defendants have moved for summary judgment on each of Plaintiff's claims. Defendants argue that Plaintiff's claim for false arrest under § 1983 implies the invalidity of the pending criminal charge, obstruction of a police officer, and therefore, must be dismissed under Heck v. Humphrey, 512 U.S. 477 (1994). Furthermore, Defendants argue that the officers are entitled to qualified immunity because they had probable cause to arrest Plaintiff and the amount of force used to arrest Plaintiff was objectively reasonable. Finally, Defendants assert that no evidence exists of a policy or custom promulgated by Metro showing deliberate indifference to Plaintiff's civil rights.

**A.  Qualified Immunity**

Officials of the executive branch exercising discretionary functions generally enjoy qualified immunity for actions within the scope of their official duties. See Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). Qualified immunity applies unless a defendant's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 752 (2002) (internal quotation omitted). Originally, in order to determine whether a government official is entitled to qualified immunity, a court first had to address whether,

4

taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant violated a statutory or constitutional right. See, i.e., Resnick v. Adams, 348 F.3d 763, 766-67 (9th Cir. 2003). If "a violation could be made out" the court then had to decide whether the right was clearly established. Id. "The plaintiff bears the burden of showing that the right he alleges to have been violated was clearly established." Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir. 1996). A clearly established right is one whose "contours ... must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). The exact action need not have been held unlawful, but "in light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640 (internal citations omitted). This evaluation must be "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. An objective standard applies. Harlow, 457 U.S. at 818-19. Additionally, the right must be clearly established at the time of the allegedly impermissible conduct. Camarillo v. McCarthy, 998 F.2d 638 (9th Cir. 1993).

Recently, however, the Supreme Court determined that the two-step sequence set out in Saucier, while often appropriate, "should no longer be regarded as mandatory." Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). A district court is permitted to exercise its "sound discretion" in deciding which prong should be addressed first "in light of the circumstances" of the particular case. Id. In this action, Plaintiff cannot demonstrate that any facts show that she suffered a constitutional violation. Therefore, Defendants are entitled to qualified immunity.

**1. Plaintiff's Arrest**

"The principles of Terry permit a State to require a suspect to disclose [her] name in the course of a Terry stop." Hiibel v. Sixth Judicial Dist. Court of Nevada, 542 U.S. 177, 187 (2004); Terry v. Ohio, 392 U.S. 1 (1968). The Supreme Court has determined that Nevada's statute requiring a person to identify himself or herself to an officer satisfies the demands of the Fourth

1  Amendment. Hiibel, 542 U.S. at 187-88.  However, a Terry stop must be justified at its inception
2  and reasonably related in scope to the circumstances which justified the initial stop.  See Id. at 188
3  (citing Terry, 392 U.S. at 20).  "Under these principles, an officer may not arrest a suspect for failure
4  to identify [herself] if the request for identification is not reasonably related to the circumstances
5  justifying the stop."  Hiibel, 542 U.S. at 188.  As in Hiibel, it is clear in this case that the request for
6  identification was reasonably related in scope to the circumstances which justified the stop.  See id.
7  at 188-89; Terry, 392 U.S. at 20.  Plaintiff, matching the description of the alleged perpetrator
8  provided by the alleged victim to the responding officers, arrived at the residence of the alleged
9  perpetrator indicated by the victim as the responding officers questioned the roommate who
10 answered the door.  Plaintiff's actions indicated that she resided in the home: (1) she walked straight
11 into the home; (2) removed her shoes; and (3) referenced problems with neighbors.  Plaintiff's
12 matching description and behavior that indicated that she resided in the home, at a minimum,
13 justified a Terry stop to request identification in order to determine whether this was the suspect that
14 officers sought.
15          Therefore, Defendants had probable cause to arrest Plaintiff for failing to provide
16 identification in accordance with Nevada statute because the request for identification was
17 reasonably related to the Terry stop.  No constitutional violation occurred, and Defendants are
18 entitled to qualified immunity.  Furthermore, even if it was determined that a constitutional violation
19 occurred, no clearly established law exists that would have put the officers on notice that the arrest,
20 as conducted in this action, violated Plaintiff's constitutional rights.[2]
21 ///
22 ///
23 _____

---

[2] Furthermore, though Plaintiff's amended complaint does not contain a specific cause of action asserting that the search of her handbag and wallet for identification was unreasonable and a violation of her Fourth Amendment rights, her opposition raises the issue. The search, subsequent to Plaintiff's arrest, did not violate Plaintiff's constitutional rights. See United States v. Passaro, 624 F.2d 938, 943-44 (9th Cir. 1980)(search to obtain identification incident to a valid arrest is reasonable as a matter of law under the Fourth Amendment).

### i. Heck v. Humphrey

Finally, even if the Court were to deny the officers qualified immunity, it would still dismiss Plaintiff's Fourth Amendment claims, because they would be barred by Heck v. Humphrey, 512 U.S. 477 (1994). The United States Supreme Court held:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 487. While Plaintiff's excessive force claims are not barred by Heck, if Plaintiff's other claims did raise genuine issues of material fact at to whether Plaintiff's Fourth Amendment rights were violated then the claims for illegal search and seizure would be barred by Heck. Resolution of those claims in favor of Plaintiff would require the Court, or the fact finder, to conclude that the Terry stop was not reasonable and that the resulting arrest for failure to provide identification was without probable cause. A judgment in Plaintiff's favor would imply the invalidity of the pending criminal proceedings. Accordingly, even if Defendants were not entitled to qualified immunity, Plaintiff's claims are premature and the Court would dismiss them.

### 2. Excessive Force

The Fourth Amendment protects individuals against excessive use of force from government officials. See U.S. Const. amend. IV. However, if an officer's use of force is objectively reasonable under the circumstances, no constitutional violation occurred. See Graham v. Connor, 490 U.S. 386, 397 (1989). The reasonableness of an arrest or seizure must be assessed by "carefully considering the objective facts and circumstances that confronted the arresting officer or officers." Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994). The court must judge the reasonableness from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. See Graham, 490 U.S. at 396.

The Court examines allegations of excessive force under the interpretation of the Fourth Amendment's prohibition on unreasonable seizures. Bryan v. MacPherson, 608 F.3d 614,

619-20 (9th Cir. 2010). Under this framework, the Court determines the reasonableness of the force employed by police officers by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. (quoting Graham, 490 U.S. at 396) (internal quotations omitted); see also, Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001).

### i. Nature and Quality of the Intrusion

To determine the nature and quality of the intrusion, the Court first makes an assessment as to the quantum of force employed by Defendants against Plaintiff. Chew, 27 F.3d at 1441; Bryan, 608 F.3d at 620. The Court finds that Plaintiff's allegations and evidence of excessive force fail to raise a genuine issue of material fact.

First, all actions by Defendants involved a low quantum of force. The conduct at issue in this action was gentle in comparison with the conduct in cases concluding that there was excessive force. See, e.g. Bryan, 608 F.3d 614 (plaintiff shot with a taser); Deorle, 272 F.3d at 1279 (shot from a non-lethal weapon removed plaintiff's eye and lodged lead in his skull). Furthermore, the evidence demonstrates that the officers used the least amount of force necessary to secure Plaintiff. The greatest amount of force applied was pressure on Plaintiff's back and shoulder blades. The force was reasonable, because as Plaintiff admits, she was struggling against the officer's attempts to restrain and handcuff her. Plaintiff was not struck and did not have a lethal or nonlethal weapon used to secure her arrest. Accordingly, the nature and quality of the intrusion was not high.

### ii. Countervailing Governmental Interest

To evaluate the government's interest in using force, the Court assesses "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396. The second factor regarding the safety of officers or others is the most important. Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005). There

must be objective factors that suggest that there is a threat to a person's safety. "[A] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." Deorle, 272 F.3d at 1281. However, the Court is not limited to a review of these factors. The Court can also consider the "totality of the circumstances" and any specific factors that may be appropriate in this case in determining the government's interest in the use of force. Bryan, 608 F.3d at 622.

Here, given the totality of the circumstances, i.e., the severity of the crime at issue (assault), Plaintiff's refusal to provide identification, and her admitted struggling against the attempts to secure her arrest, Defendants were objectively justified in using a low amount of force to secure Plaintiff's arrest. The immediate threat that Plaintiff posed to the safety of the officers and others was low. However, Plaintiff also admitted to struggling against the attempts to restrain her. Therefore, a minimal amount of force was necessary to secure her. Given the undisputed facts in this case, that Defendants' use of force was minimal and balanced against the low government interest in using force, Defendants are entitled to qualified immunity, because they did not exceed the amount of force reasonably necessary to effect Plaintiff's arrest. See Meredith v. Erath, 342 F.3d 1057, 1063 (9th Cir. 2003)(detention in overly tight handcuffs that caused extensive bruising during execution of search warrant for evidence involving a non-violent crime violates Fourth Amendment rights); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993)(detention in handcuffs that caused pain and bruising violates Fourth Amendment). Unlike the cited cases, Plaintiff did not complain of any lasting pain or damage, beyond that used to secure Plaintiff in handcuffs.[3] Accordingly, Defendants are entitled to qualified immunity and Defendants' motion for summary judgment on Plaintiff's claim for excessive force is granted.

---

[3] To the extent that Plaintiff complains about the length of her detention in handcuffs, characterizing it as a detention to determine her identity, it is undisputed that officers almost immediately found her identification. It is also undisputed that the remaining detention was based on Plaintiff's arrest and citation for obstruction and to conclude the investigation into the assault charge for which Plaintiff was not arrested or cited.

9

### B. Metro's Municipal Liability

Plaintiff's 42 U.S.C. § 1983 claims against Metro fail as a matter of law. Section 1983 provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Municipalities and other local government units are included in that group of "persons" referred to in § 1983. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978). A plaintiff may establish municipal liability under §1983 by demonstrating one of the following three factors: 1) a city employee violated Constitutional rights either pursuant to an official policy or informal practice of the municipal entity, 2) the violator held final policy-making authority, or 3) a person with final policy-making authority ratified the unconstitutional behavior. Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).

### 1. Violation Pursuant to an Official or Unofficial Policy

### a. An Official Policy

Plaintiff fails to establish that a Metro employee violated his Constitutional rights "pursuant to official municipal policy." Monell, 436 U.S. at 691. "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. Therefore, "a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. The official-policy requirement for municipal liability under § 1983 distinguishes the acts of municipal employees from the acts of the municipality, thus determining whether the city is actually responsible for the violation. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Therefore, a "governmental entity is liable under §1983 only when the entity itself is a " 'moving force' " behind the deprivation." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citations omitted).

Plaintiff has not raised a genuine issue of material fact regarding an official Metro policy that allows or encourages illegal search, seizure or excessive force as alleged here. In fact, Plaintiff repeatedly argues that the Defendant officers violated express Metro policies. Plaintiff has failed to sufficiently raise issues of fact that would establish violation of an official policy.

### b. Unofficial Policy:  Widespread Practice or Custom

Even if a plaintiff cannot establish the existence of an official municipal policy, the plaintiff may also establish municipal liability by demonstrating that the municipal employee acted in accordance with a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989) (quoting Pembaur, 475 U.S. at 485-87 (White, J., concurring)). "[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v.  Praprotnik, 485 U.S. 112, 127 (1988) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 (1970)).  Therefore, "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989) (abrogated on other grounds by Beck v. City of Upland, 527 F.3d 853 (9th Cir. 2008)).

Here, the evidence is insufficient to establish that Metro maintained an unconstitutional "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Jett, 491 U.S. at 737 (quoting Pembaur, 475 U.S. at 485-87 (White, J., concurring)). The evidence presented by Plaintiff fails to show that the alleged unconstitutional conduct in this case was so widespread that it constituted a custom with the force of law at Metro. See City of St. Louis, 485 U.S. at 127. Plaintiff merely disagrees with the findings of the internal affairs investigation into Plaintiff's official complaint filed with Metro. She has produced no evidence that Metro has an unofficial policy or custom of denying such complaints.

11

Even assuming that Defendants were liable for the alleged constitutional violations against Plaintiff, this would be an insufficient evidentiary foundation for municipal liability because evidence demonstrating an occurrence of a single incident of unconstitutional behavior fails to establish a municipal policy or custom.  See Davis, 869 F.2d at 1233.

### c.  A Person with Policy-Making Authority Ratified the Unconstitutional Behavior

Since the Court has found that no constitutional violations occurred, it must dismiss Plaintiff's claims for municipal liability based upon ratification.

### C.  State Law Claims

It is unclear whether Plaintiff intends to assert state law claims.  A district court has discretion to decline to exercise supplemental jurisdiction over a claim if all claims over which it has original jurisdiction have been dismissed.  See 28 U.S.C. § 1367(c).  Since the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims if any.

### IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#42) is **GRANTED**;

IT IS FURTHER ORDERED that Defendants' Motion to Strike the Sur-reply (#59) is **DENIED**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (#25), Motion in Limine (#44), Motion to Extend Time (#45), Motion to Strike (#49), and Motion for Sanctions (#50) are **DENIED**;

///

///

///

///

1    IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiff.

DATED this 17th day of November 2011.

_____
Kent J. Dawson
United States District Judge